UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SEAN RAMSEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3910-B |
| | § | |
| DELRAY CAPITAL LLC and MARK | § | |
| GREY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Sean Ramsey's Motion for Default Judgment (Doc. 23), filed

November 3, 2015. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in**

**part** Ramsey's Motion, and declines to award him damages at this time.

## I.

## BACKGROUND

This is a Fair Debt Collection Practices Act (FDCPA) suit.[1] On November 4, 2014, Sean

Ramsey (Ramsey) filed a complaint against Delray Capital LLC (Delray), alleging Delray violated

the FDCPA on multiple occasions when its representatives phoned both him and his brother in

reference to an alleged debt (Doc. 2).[2] Specifically, Ramsey says Defendants' representative called

his brother and left a voicemail, telling him that "she was calling from the compliance and fraud

---

[1] Ramsey also sues under the Texas Deceptive Trade Practices Act (TDPA). *See* Tex. Fin. Code § 392.403.

[2] Since then, Ramsey has amended his complaint to add Mark W. Gray as a Defendant (Doc. 16). He contends that Gray, "as the named Member of Delray Capital, LLC," is individually liable for all of Delray's debts, since Delray has forfeited its corporate charter. *Id.* ¶ 4.

division of Kaufman County regarding 2 claims pending against him [Ramsey] with the state and that formal charges will be filed at 1PM that day if he did not return the call."[3] Doc. 16, Second Am. Compl. ¶ 8. Ramsey says Defendants' representative also called him personally to make a similar statement, though this time the representative identified herself as Victoria Kelly of the Kaufman County compliance and fraud division and suggested that actual charges were pending. *Id.* ¶ 9. Ramsey says these "illegally threatening criminal charges" coerced him into sending money, presumably to Defendants. *Id.* ¶ 10.

Ramsey now sues under the FDCPA, alleging Defendant, through its representatives, (1) failed to disclose that it was a debt collector and that any information obtained would be used to collect a debt; (2) represented it was calling from a government office and that criminal charges were pending; (3) threatened to take action that it could not legally take; and (4) contacted third parties and revealed confidential information to them. *Id.* ¶¶ 11–15. Ramsey also sues under the Texas Financial Code, alleging Defendant threatened to, and possibly did take, an action prohibited by law. *Id* ¶ 16 (citing Tex. Fin. Code § 392.301(a)(8)).

Ramsey further alleges that all acts and omissions were undertaken (1) "on behalf of the Defendant by its respective officers, agents, or employees acting at all times relevant hereto within the scope of that relationship"; (2) "wilfully, intentionally, knowingly, and/or in gross disregard of the rights of the Plaintiff"; and (3) "indiscriminately and persistently, as part of its regular and routine collection efforts, and without regard to or consideration of the identity or rights of the Plaintiff." *Id.* ¶¶ 17–19. For this, Ramsey seeks compensatory, actual, and statutory damages under 15 U.S.C. §

---

[3] It is unclear whether "he" means Ramsey or Ramsey's brother.

1692k(a) and Tex. Fin. Code § 392.403, costs and attorneys' fees, and any other relief the Court deems just. *Id.* ¶ 20; *id.* at 4; Doc. 23, Mot. Default J. 2.

Ramsey served Gray a copy of his Second Amended Complaint on March 23, 2015 (Doc. 19) and Delray, via its registered agent, on April 13, 2015 (Doc. 20). To date, neither Defendant has answered or otherwise made an appearance in this case. Consequently, Ramsey requested the Clerk enter default against both on September 15, 2015 (Doc. 21), which it did that same day (Doc. 22). On November 3, 2015, Ramsey moved the Court for a default judgment against Defendants. Doc. 23, Mot. for Default J.  The Court now considers that Motion.

## II.

### LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to the Rule, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b).

That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

- 3 -

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, the Court is to assume that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages.") (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524-25 (5th Cir. 2002). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation

by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

Applying this three-part analysis, the Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis in Ramsey's Complaint. But because the Court cannot determine the amount of damages with mathematical calculation by reference to information in the pleadings and supporting documents, it will not award damages at this time. *See James*, 6 F.3d at 310. Thus, while Ramsey is entitled to a default judgment against Delray and Gray for their alleged FDCPA and Texas Financial Code violations, Ramsey will take nothing at this point.

A.      *Whether An Entry of Default Judgment Is Procedurally Warranted*

In this case, after reviewing Ramsey's Motion in light of the six *Lindsey* factors, the Court finds that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings. Consequently there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fourth, Defendants have completely failed to respond to Ramsey's Complaint for over a year, mitigating the harshness of a default judgment. *John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, No. 3:12-CV-4194, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the

Court is not aware of any facts that would give rise to "good cause" to set aside the default if

challenged by Ramsey. Thus Ramsey has met the procedural requirements for default judgment.

B.      *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, the Defendants are deemed to have admitted the allegations

set forth in Ramsey's Complaint. Nonetheless, the Court must review the pleadings to determine

whether they present a sufficient basis for Ramsey's claim for relief. *Nishimatsu Constr.*, 515 F.2d at

1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim
> showing that the pleader is entitled to relief." The purpose of this requirement is "to
> 'give the defendant fair notice of what the . . . claim is and the grounds upon which
> it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.
> Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only
> "be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*
> (footnote and citations omitted). "[D]etailed factual allegations" are not required,
> but the pleading must present "more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

1.      FDCPA Violations

a.      *Failure to disclose status as debt collector under 15 U.S.C. § 1692e(11)*

Under the FDCPA, "if the initial communication with the consumer is oral, in that initial

oral communication . . . the debt collector [must disclose that it] is attempting to collect a debt and

that any information obtained will be used for that purpose . . . ." 15 U.S.C. § 1692e(11). The debt

collector must also "disclose in subsequent communications that the communication is from a debt

collector." *Id.*[4]

Here, Ramsey alleges that Defendants' representatives indicated they were "calling from the compliance and fraud division of Kaufman County regarding 2 claims pending against him with the state and that formal charges w[ould] be filed . . . if he did not return the call." *Id.* ¶ 8. Taking Ramsey's allegation as true, Defendants' representative identified herself as a municipal government employee, not a debt collector, thereby violating the statute.

> b.   *Representing that one is calling from a government office and indicating that criminal charges are pending in violation of §1692e(1), (7) and (13)*

Next, Ramsey says that Defendants' representative's statement that she was from a government office and that criminal charges were pending violated additional sections of the FDCPA. *Id.* ¶¶ 8–9, 13. Specifically, Ramsey says, Defendants violated (1) subsection 1 of the statute, which bars any "false representation or implication that the debt collector is vouched for, bonded by, or affiliated with . . . any State"; (2) subsection 7, which prevents "[t]he false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer"; and (3) subsection 13, which prevents "[t]he false representation or implication that documents are legal process." 15 U.S.C. § 1692e(1), (7), and (13). If Defendants' representative did indeed claim to call from the Kaufman County compliance and fraud division, then, given the fact that there is nothing to indicate that representative was formally associated with that body—her call would violate subsection 1, as she falsely suggested she was "affiliated with . . . any State," which includes a municipal government. *See Gradisher v. Check Enf't Unit, Inc.,* 210 F.

---

[4] "[E]xcept that this paragraph shall not apply to a formal pleading made in connection with a legal action." *Id.*

Supp. 2d 907, 914 (W.D. Mich. 2002) (finding that company collecting dishonored checks violated subsection 9 when it used local sheriff's office letterhead and did not reference its own name, thus implying that a "State" can include a municipal government under 15 U.S.C. 1692e)). And if this representative announced to Ramsey and his brother that "2 claims [were] pending against [Ramsey] with the state and that formal charges w[ould] be filed . . . if he did not return the call," that would violate subsection 7, as it constitutes "a false representation or implication that the consumer committed a[] crime," offered "in order to disgrace the consumer," since the representative made this allegation in connection with a debt collection attempt. The Court does not see, however, how the representative's statement "that formal charges w[ould] be filed . . . if he [Ramsey] did not return the calls" violates subsection 13, which makes illegal a "false representation . . . that documents are legal process."

> c.   *Threatening an action which cannot legally be taken under § 1692e(5)*

Ramsey continues, alleging Defendants' representative threatened action neither she nor Defendants could legally take, violating subsection 5, which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Indeed, if Defendants' representative indicated that Defendants would file formal charges against Ramsey if either he or his brother did not return the phone call, this would qualify as a threat to take action that could not legally be taken, as Defendants could not file a formal charge as a representative of the Kaufman County municipal government, since they were not affiliated with that entity.

> d.   *Contacting third parties and revealing confidential information to them in violation of § 1692(b)(1) and (2)*

Ramsey further contends that Defendants' representative contacted third parties and

- 8 -

revealed confidential information to them, violating § 1692b(1) and (6), which requires a debt collector who is calling a third party to acquire location information about the consumer to (1) "identify himself"; (2) "state that he is confirming or correcting location information concerning the consumer," (3) "identify his employer," though "only if expressly requested"; and (4) "not state that such consumer owes any debt." 15 U.S.C. § 1692b.

Here, Ramsey says that Defendants' representative left a voicemail on his brother's phone indicating that she was calling from the Kaufman County compliance and fraud division, that there were two claims against Ramsey, and that it would file formal charges against him if he did not return the call. *Id.* ¶ 8.

Even if true, nothing in Ramsey's allegations indicate that Defendants representatives were calling Ramsey's brother for the purpose of "acquiring location information about [Ramsey]." Rather, all Ramsey says is that Defendants' representative "began calling third parties about Plaintiff's debt." *Id.* ¶ 7. Thus, Ramsey has pled facts that would neither bring his claim within subsection b's ambit nor subject Defendants to its strictures, since he has not alleged Defendants or their representatives were calling his brother to determine Ramsey's location.

2.   Texas Financial Code § 392.301(a)(8)

Next, Ramsey alleges Defendants' threats to take actions prohibited by law, *see supra* Sec. III(1)(c), violated the Texas Financial Code, which prohibits "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). As the statutory language here is fairly close to that of the analogous FDCPA provision, the Court finds Ramsey has stated a claim under the Texas Financial Code, as well. *See supra Sec.* III(1)(c); 15 U.S.C. § 1695e(5).

3.      Attorneys' Fees

Last, Ramsey alleges that Defendants and their representatives committed the above acts and omissions "willfully, intentionally, knowingly, and/or in gross disregard for the rights of the Plaintiff," and, further, did so "indiscriminately and persistently, as part of its regular and routine collection efforts, and without regard to or consideration of the identity or rights of the Plaintiff." Doc. 16, Second Am. Compl. ¶¶ 17– 19. All this, Ramsey says, entitles him to attorneys' fees under both the Texas Financial Code and FDCPA. *Id.* ¶ 20. Indeed, "[i]t is well-established that the FDCPA is a fee-shifting statute and makes the debt collector liable for reasonable attorney's fees upon successful prosecution of a plaintiff's case." *Young v. Asset Acceptance, LLC*, 3:09-CV-2477, 2011 WL 618274, at *2 (N.D. Tex. Feb. 10, 2011) (citing 15 U.S.C. § 1692k(a)(3)). For the reasons stated below, however, Ramsey may not collect attorneys' fees at this time.

C.      *Plaintiff's Claim is Not for a Sum Certain*

"The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages . . .[;] establish the truth of any allegation by evidence; or investigate any other matter." Fed. R. Civ. P. 55(b)(2). "Where the amount claimed is a liquidated sum or one capable of mathematical calculation," however, a Court may enter judgment without a hearing. *James*, 6 F.3d at 310.

Here, Ramsey asks for (1) compensatory damages; (2) actual damages; (3) statutory damages; (4) costs, and (5) reasonable attorneys' fees under 15 U.S.C. § 1692k(a) and/or Tex. Fin. Code § 392.403; Doc. 16, Second Am. Compl. at 4; Doc. 23, Mot. Default J. 2. The Court must now determine whether his Motion, along with its attached declarations and affidavits, is sufficient to allow it to grant Ramsey damages, and, if so, how much.

- 10 -

1.    Compensatory Damages

Ramsey asks for $1,000, which he says represents the amount "he was pressured to pay for the debt he does not owe." Doc. 23, Mot. Default J. 2. To support this allegation, he offers his own declaration, indicating that he wired $1,000 "as directed by the collector." Doc. 23-1, Decl. of Sean Ramsey (Ramsey Decl.). Because Ramsey has offered no other evidence to demonstrate he did indeed make a wire payment in this amount, the Court does not find it appropriate to grant compensatory damages in this instance.

2.    Actual Damages

Ramsey also asks for actual damages, namely those stemming from his "emotional distress and humiliation" due to the harassing phone calls. Doc. 23, Mot. Default J. 2. In support, he again offers his sworn declaration, indicating Defendants' representatives' calls and statements made him "panic" and "trembl[e]," since their threatened criminal charges "could [have] hurt [his] job and . . . ability to support [his] family." Doc. 23-1, Ramsey Decl. 1. He also indicated he was embarrassed when Defendants' representatives phoned his brother regarding his debt. *Id.* at 2. For this, Ramsey says he believes Defendants "should be forced to pay . . . additionally . . . $25,000.00 for their actions," which the Court construes as an actual damages claim. *Id.* The Court does not agree. Again, while Ramsey may indeed be entitled to actual damages for mental anguish, the Court declines his request here without more than his declaration's sparse statements.

3.    Statutory Damages

"[A] plaintiff need not establish actual damages to recover [statutory damages] under the FDCPA." *In re Eastman*, 419 B.R. 711, 733 (Bankr. W.D. Tex. 2009) (citing *Neild v. Wolpoff & Abramson, LLP*, 453 F.Supp. 2d 918, 924 (E.D. Va. 2006); *Prophet v. Joan Myers, Myers & Assocs.*,

*P.C.*, 645 F. Supp.2d 614, 617 (S.D. Tex.2008)). Thus, although the Court refrains from awarding actual damages at this time, that does not necessarily preclude it from awarding statutory damages. In awarding statutory damages, the Court considers the factors laid out in the statute, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional . . . ." *Id.* (quoting 15 U.S.C. § 1692k(b)(1)).

That being said, the amount of statutory damages is inherently insusceptible to mathematical calculation, and so the Court again believes it most prudent to refrain from awarding a specific sum at this moment. Accordingly, it will wait until Ramsey has provided supplemental briefing on compensatory damages, actual damages, and costs.

### 4.    Costs and Attorneys' Fees

Last, Ramsey requests $4,200.00 in attorneys' fees, attaching a supporting affidavit from his lawyer, Sharon Campbell, along with her detailed accounting of her tasks related to his suit. Doc. 23, Mot. For Default J. ¶¶ 7, 16; Doc. 23-2, Atty's Fee Aff. from Sharon Campbell. While this documentation would otherwise be sufficient for this Court to grant attorneys' fees, such an award under the FDCPA requires a plaintiff to have succesffuly brought an action to enforce a defendant's liability under the statute. If a plaintiff "fail[s] to enforce any liability for actual or additional damages against [a defendant][,]" then she "does not meet the explicit requirement of § 1692k(a)(3)," which requires "she bring a 'successful action to enforce the foregoing liability,' in order to receive attorney's fees and costs." *Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir. 1996).[5] Thus, while this Court does not

---

[5] The relevant Texas Deceptive Trade Practices Act (DTPA) subsection (Tex. Fin. Code § 392.301(a)(8)) arguably imposes the same requirement. *See Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d

rule out an award of attorneys' fees in the future, Ramsey must first prove actual or additional damages.

## IV.

## CONCLUSION

In sum, the Court concludes that a default judgment against Defendants is both procedurally and substantively warranted in this case. Thus it **GRANTS** Ramsey's Motion for Default Judgment on all claims, with the exception of 15 U.S.C. § 1692e(13) and 15 U.S.C. § 1692b(1)–(2), which it **DENIES.**

However, in light of the fact that Ramsey has failed to submit sufficient evidence to allow this Court to calculate a specific damages figure or costs—and because attorneys' fees are contingent upon a plaintiff receiving actual damages—this Court will not award Ramsey anything at this time. Accordingly, Ramsey has until **May 28, 2016** to submit sufficient documentary proof—other than his sworn declaration—to demonstrate that he wired the $1,000.00 he says he did, suffered the mental anguish he claims he did, and incurred a specific amount of costs in prosecuting this action. Without this material support, the Court will not award Ramsey anything. Should Ramsey demonstrate he is entitled to actual damages, this Court will consider the issue of attorneys' fees at that time.

---

15, 30 (Tex. App.—Tyler 2000) ("In the absence of a judgment for actual damages under the DTPA, an award of attorney's fees is not proper."). At least one federal court, however, has disagreed, holding that *either* injunctive relief or actual damages is sufficient to permit an award of attorneys' fees under the Texas statute. *See In re Eastman,* 419 B.R. at 737. In any event, Ramsey has secured neither at this juncture, and so attorneys' fees are inappropriate at this time.

SO ORDERED.

SIGNED: April 28, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE